# KNAUS TRUCK LINES, INC., AND ANOTHER v. RICHARD H. DONALDSON AND OTHERS.[1]

January 18, 1952.

No. 35,588.

*Clarence O. Holten, James S. Eriksson,* and *Bellamy, Eastman & Christol,* for appellants.

*Randall, Smith, Blomquist & Krawetz,* for respondents.

---

[1]Reported in 51 N. W. (2d) 99.

LORING, CHIEF JUSTICE.

.This was a suit for specific performance of an option to purchase property. In their complaint, plaintiffs sought specific performance of the original option, or, if that be denied because it was modified, then specific performance of the option as modified. Defendants' answer included the following:

"III.

"Allege that Exhibit 'A' [option agreement] of plaintiff's complaint is not now in effect or force and was not in effect or force on June 20, 1945, or for a long period of time prior thereto or at any time subsequent thereto; that the said Exhibit 'A' was expressly rejected, cancelled and terminated by the said plaintiffs."

At the close of the trial the trial court found:

"4. That the aforesaid option was cancelled, terminated, and rescinded by agreement prior to any time the plaintiffs or either of them attempted to exercise it.

"5. That the aforesaid written option was never modified and no other option agreement was entered into by the parties with respect to any of the property described in paragraph 2 above."

Judgment was ordered for defendants. Plaintiffs moved to amend the findings and for judgment or a new trial. This was denied. Plaintiffs appealed from the judgment.

The following facts are relevant to the questions raised: In the latter part of 1940, defendants constructed a terminal building on request of plaintiffs. Plaintiffs and two others formed a corporation known as Hi-Way Freight Terminal, Incorporated, hereinafter called Hi-Way. The terminal building was leased to the new corporation for a 10-year period. In connection with the lease, plaintiffs executed a guaranty that the rent would be paid by Hi-Way, and defendants gave plaintiffs an option to purchase the premises, "together with all of the buildings and appurtenances thereunto belonging or hereafter erected thereon," for the sum of $38,000, subject to certain adjustments specified in the option. The option was to continue in effect until December 1, 1950.

In the spring of 1941, plaintiffs requested defendants to build an addition to the terminal building for the reason that the building then had too little loading space for the amount of office space; and that therefore the operations were unprofitable.

Defendants were represented throughout the transactions here involved by Robert H. Donaldson, hereinafter referred to as defendants' representative. Plaintiff Buckingham Transportation Company was represented by its officer Harold Buckingham. Knaus Truck Lines, Incorporated, hereinafter referred to as Knaus, by its president, Ezra Knaus, had appointed Lyle Hartley as an agent to vote its stock in Hi-Way. As a director in Hi-Way, this agent was given authority to negotiate and arrange for the building of the addition. Ezra Knaus testified that all the agent's activities in connection with negotiations for the building of the addition were reported back to him, Knaus.

Defendants' representative testified that after plaintiffs requested him to build the addition he told both plaintiffs and Knaus's agent that the option "couldn't stand." He testified that Knaus's agent and Buckingham later told him that:

"Well, they informed me that they had a meeting of their Board of Directors and they had decided that they would accept my figures regarding the new terminal and would pay the additional rent after it was finished, and that the option would have to be modified, if there was an option to continue on."

The addition was completed in December 1941 or January 1942 at a cost of $19,676.79. Most of the addition extended onto property of defendants other than that described in the original option.

In 1943, Hi-Way encountered financial difficulties, and Knaus took over its management. About this time, Knaus sold its stock in Hi-Way. In December 1948 and at other dates, plaintiffs served several notices on defendants of exercise of its "option to purchase." Defendants did not convey the property, and this suit for specific performance was commenced in November 1949. It resulted in judgment for defendants.

The questions presented for decision are:

(a) Does the evidence support the findings and conclusions of the trial court that the option was cancelled, terminated, and rescinded by agreement and never modified?

(b) Were the findings and the conclusions within the issues raised by the answer?

(c) Was the alleged cancellation of the option in violation of the statute of frauds?

By the original lease:

(a) Defendants leased the building to Hi-Way and gave an option to plaintiffs.

(b) Hi-Way promised to pay a specified rent.

(c) Plaintiffs guaranteed payment of this rent.

Plaintiffs' request to defendants to build an addition constituted an offer. Defendants made a counteroffer by which they agreed to build the addition on condition that the option would not stand. It then became incumbent on plaintiffs, if they wanted to complete the contract, to accept this counteroffer *with its condition.*

The question, then, becomes one of whether plaintiffs did accept the counteroffer of defendants. The evidence tends to prove that Buckingham and Knaus's agent directed defendants to build the addition.

■ We need not decide whether the agent was acting within the scope of his authority. It is conceded that the agent had authority to negotiate, and Ezra Knaus was told all that transpired during the negotiations. He thus had knowledge of the condition stated by defendants and of the acceptance by the agent of the condition. There is abundant evidence to show that Knaus benefited by the transaction in two ways, (1) as a stockholder of Hi-Way, and (2) in the use Knaus's trucks had of the terminal.

"Where a principal accepts and retains the benefits of an unauthorized act of an agent with full knowledge of all the facts, he thereby ratifies the act." Strader v. Haley, 216 Minn. 315, 328, 12 N. W. (2d) 608, 614, 150 A. L. R. 970.

Unless the other party agrees to a modification, the principal may not accept part of the contract while repudiating another part, thus gaining benefits while not becoming obligated as to the burdensome part. Independent Harvester Co. v. Malzohn, 147 Minn. 145, 179 N. W. 727. By ratification, Knaus was bound by the acts of its agent if there was an acceptance of defendants' offer.

■ An acceptance need not repeat the terms of the offer. Hayden v. Byron, 78 Minn. 27, 80 N. W. 835; 2 Dunnell, Dig. § 1740. Knowing that defendants agreed to build the addition only on the condition that the option would not stand, plaintiffs' direction to defendants to build was an acceptance of defendants' offer. Between plaintiffs and defendants, the contract was executed when the addition was completed; thereby, plaintiffs did not merely *promise* to give up their option rights, but the evidence supports the finding that they gave them up.

There is nothing in the record which would support a finding that there was an agreement on a modified option. Therefore, the option was surrendered and not modified. That this was the intent of Knaus is shown by the testimony of Ezra:

"A. * * * as long as he didn't ask us to guarantee any lease on it, we wasn't particular about the option. There was no lease or option, either one, on the addition. I expected at the time to get one but never did get a lease.

"Q. You expected him to request you to guarantee the modified lease?

"A. I expected him to at least give the Terminal Company a lease on the property; but as far as I could find, no mention was ever made of it.

"Q. That isn't the question I asked. As I understand from your previous testimony, you expected Mr. Donaldson to come around and demand that you guarantee the new lease?

"A. I wouldn't have been surprised, but after a time I forgot about it.

"Q. But since he didn't come around and ask for that, you gave no consideration to any option at all?

"A. That is right."

Mitchell v. Rende, 225 Minn. 145, 30 N. W. (2d) 27, cited by plaintiffs, is not in point because in that case there was either a modification or the old agreement remained in effect.

In the instant case, the evidence supports the trial court's finding that plaintiffs had terminated their option by agreement.

■ Defendants' answer alleged an express rejection, cancellation, and termination of the option agreement. As we have seen, in directing defendants to build the addition plaintiffs agreed to surrender their option rights. Therefore, the contract was an express contract, and the surrender of the option was an express termination of any rights under it.[2]

■ We need not decide whether the second contract was within the statute of frauds. If it was, the performance by defendants in building the addition takes the contract out of the operation of the statute. Bergstein v. Bergquist, 152 Minn. 358, 189 N. W. 120; Phelan v. Carey, 222 Minn. 1, 23 N. W. (2d) 10.

Judgment affirmed.

Mr. Justice Frank T. Gallagher took no part in the consideration or decision of this case.

[2] "* * * A contract may be inferred from acts as well as from express language. It may be partly expressed in words, partly in acts, and partly in circumstances. Such a contract is recognized as a form of express contract. [Citing case.] In the case at bar the conversation, the acts, and circumstances * * * were quite sufficient to sustain a finding of express contract." Randall Co. v. Briggs, 189 Minn. 175, 178, 248 N. W. 752, 753.

Dybvig v. Minneapolis Sanatorium, 128 Minn. 292, 294, 150 N. W. 905, 906; In re Estate of Havenmaier, 163 Minn. 218, 220, 203 N. W. 958; Zieve v. Holstad Coffee Co. 198 Minn. 580, 270 N. W. 581; see, Town of Balkan v. Village of Buhl, 158 Minn. 271, 197 N. W. 266, 35 A. L. R. 470; cf. McArdle v. Williams, 193 Minn. 433, 258 N. W. 818; Peet v. Roth Hotel Co. 191 Minn. 151, 253 N. W. 546. See, 2 Dunnell, Dig. & Supp. § 1724.