# RASMUS A. JACOBSON v. W. E. McCULLOUGH and Others.[1]

### January 27, 1911.

### Nos. 16,914, 16,915—(247, 248).

**Failure of project — right to return of subscriptions.**

The rule that contributors to a fund, the purpose of which has failed, are entitled to return of their respective contributions, applied to two of the parties herein, who paid money "on account" of their interest in a proposed corporation never organized. Because the extent of their interest in the proposed corporation was not agreed upon, but was a subject of disagreement, they acquired no ascertainable interest in the proceeds of a contract entered into by the other two parties herein, though such contributions were used to perform, in part, the contract, and though the contracting parties intended to turn the contract over to the corporation when organized.

[1]Reported in 129 N. W. 759.

**Parties to contract were partners.**

    Under the evidence, the two parties herein making such contract were and are copartners in the performance of the contract, and as such are entitled to share equally in the proceeds.

    Action in the district court for Ramsey county against W. E. McCullough, Arthur G. Cheney, Rasmus J. Gjerde, Timothy Foley, M. B. Foley, P. Welch and J. W. Stewart, to restrain defendants Foley, Welch and Stewart from paying over any money due upon a certain contract to defendants McCullough, Cheney or Gjerde; that the pretended claim of these defendants to any partnership interest in plaintiff's business be determined; that they be adjudged to have no interest therein, and that defendants Foley, Welch and Stewart be directed to pay plaintiff the balance due upon a certain railroad construction contract; that plaintiff have judgment against defendant McCullough for $5,000, amounts collected by him from defendants Foley, Welch and Stewart, less the sum of $2,000; and that plaintiff be adjudged to pay to defendants the amount paid into a certain proposed corporation. The facts are stated in the opinion.

    In their separate answer defendants McCullough and Cheney alleged that McCullough put in $2,200 in cash, and that plaintiff furnished equipment to the value of about $3,000; that on June 21, 1909, McCullough, who was a civil engineer, entered upon the performance of the contract and devoted his entire time and attention thereto until it was completed. The answering defendants asked that plaintiff be adjudged to be their partner and that the partnership be wound up. In his separate answer defendant Gjerde admitted that he had a verbal understanding with plaintiff and defendant McCullough to form a corporation to take over the business and assets of plaintiff, and that in good faith for the purpose of becoming a stockholder in it, he had paid over the sum of $2,000, which had been used in the business of the corporation; admitted that McCullough and Cheney contributed to the capital stock of the corporation, but denied that he had refused to carry out the contract and demanded that the season's profits be determined.

    The case was tried before Bunn, J., who made findings of fact, and as conclusions of law found that plaintiff and defendant Mc-

Cullough were equal partners in the enterprise; that defendants Gjerde and Cheney were not partners; that the purposes for which the partnership was formed had been fulfilled and a full settlement should be had, and to that end an accounting of the partnership affairs should be had; that plaintiff and defendant McCullough should be enjoined from collecting any part of the sum in the hands of Foley, Welch and Stewart belonging to the partnership, and from selling any of the personal property belonging to the partnership; that the outfit owned by plaintiff prior to June 21, 1909, was his own property and not partnership property; that a receiver should be appointed, to take possession of all personal property belonging to the partnership, to collect all moneys due the partnership, pay all debts thereof, if any, to sell all such personal property and to make report to the court of his doings as such receiver; that after such accounting was had, and all the assets collected and reduced to cash and its debts, if any, paid, the balance was to be distributed as follows: The sum of $2,000 to defendant Gjerde, with interest on said sum from July, 1909; $1,000 to defendant Cheney with interest from 1909; plaintiff to have the balance, if any, he was found on said accounting to have contributed to the enterprise, including $2,500 allowed him for the use of his outfit, over and above the sums received by him out of the proceeds of the contract, the balance to be divided equally between plaintiff and defendant McCullough, charging plaintiff with the balance, if any, of the amounts drawn by him over and above the amounts contributed by him, as shown by the accounting, and charging McCullough with the $5,000 and interest drawn by him and crediting him with the $2,200 and interest paid by him. From an order denying plaintiff's motion for a new trial as to defendant McCullough, he appealed. From an order denying defendant Gjerde's motion for a new trial, he appealed. Affirmed on both appeals.

*Gjertsen & Lund* and *Henry J. Gjertsen,* for appellant Jacobson.
*Arctander, Johnson & Berg,* for appellant Gjerde.
*Wright & Machan,* for respondents McCullough and Cheney.

SIMPSON, J.

June 21, 1909, Jacobson, plaintiff, and McCullough, one of the defendants, together agreed, in writing, with Foley, Welch & Stewart to do the grading for twenty-five miles of railroad near McGregor. This contract was thereafter performed on the part of Jacobson and McCullough at a large profit. Prior to the taking of this contract there had been talk among Jacobson and McCullough and the two other defendants, Gjerde and Cheney, of organizing a corporation to take over the business and outfit of Jacobson, who had for some time been in railroad construction work, and to carry on a general contracting business in such work. No definite plan to so incorporate was then matured, and because of apparent obstacles to McCullough joining such enterprise negotiations therefor were for a long period prior to June 21 wholly abandoned. At the time the contract was taken for the McGregor work, it was in the minds of both Jacobson and McCullough that the plan to incorporate to take over the Jacobson contracting business would be revived, and it was contemplated by them that the McGregor contract would be turned over to the corporation when such corporation was formed. There was, however, at this time, no understanding between Jacobson and McCullough, on the one hand, and Cheney and Gjerde, or either of them, on the other hand, that Jacobson and McCullough represented or had any authority to act for or in behalf of Cheney and Gjerde, or either of them, in taking the McGregor contract.

After the making of the McGregor contract, negotiations for the organization of a corporation in which the four-named parties would be stockholders were renewed, and it was agreed among these four that a corporation would be organized to take over the contracting business of Jacobson, and that the McGregor contract would be turned into the corporation, and that they would each become shareholders in the corporation. Pursuant to this general plan, the parties contributed to the contemplated corporation fund, "on account" or "in part payment" of interest in the proposed corporation, respectively, Gjerde, $2,000, Cheney $1,000, and McCullough $2,200. The money so contributed was handed to Jacobson, he issuing a

receipt therefor. It was understood that the corporation would take over Jacobson's grading outfit at its value, to be later agreed upon. The funds so coming into the possession of Jacobson were used in the prosecution of the McGregor work. During the greater part of the period that the work under the McGregor contract was in progress, McCullough devoted his entire time to the work, receiving no salary. Jacobson assisted in the general direction of the work and in obtaining supplies and equipment therefor, but devoted a large part of his time to the superintending of another grading contract which he then had. Gjerde, who had for many years been a superintendent for Jacobson, served in that capacity on the Mc-Gregor work, drawing a salary of $150 per month. Cheney was otherwise employed, and performed no services in the carrying on of the McGregor contract.

The general understanding among these four men that a corporation would be formed, in which they would be shareholders, continued until February, 1910, but at no time were all the essential terms of incorporation agreed upon. Neither the total capitalization of the corporation, nor the respective share of each of the said promoters in the corporation, was at any time settled. On February 20, 1910, when the parties met to perfect plans for incorporation, they were wholly unable to agree as to the respective share of each in the proposed company, and all plans for incorporation were abandoned. A dispute then arose as to the interests of each of the parties in the property used in carrying on, and the proceeds arising out of, the McGregor contract. Thereupon Jacobson brought this action, making the other three parties defendant, and the issues raised involve the rights of the respective parties growing out of the above transactions.

Upon the trial, the court made findings, including substantially the facts stated above, and the additional facts: That plaintiff Jacobson and defendant McCullough were and are equal partners in the enterprise referred to as the McGregor contract, and that the defendants Gjerde and Cheney are not, nor is either of them, a partner in said enterprise. The court therefrom determined that Cheney and Gjerde were entitled to a return of the money contributed by

them, with interest, and that McCullough and Jacobson were each entitled to a half interest in the profits of the McGregor contract, the exact amount each was entitled to receive to be determined by an accounting. The plaintiff and the defendant Gjerde separately moved for a new trial, and are now appealing from the order made denying each of said motions. The respective assignments of error involve the correctness of the findings of fact as to the relationship of the parties to the McGregor contract, and the conclusions of law based thereon.

The questions raised may be best disposed of by first determining what interest, if any, the promoters of the proposed corporation, as such, acquired in the McGregor contract. Both appellants claim that the McGregor contract was taken for the benefit and to be the property of a proposed corporation being promoted by Jacobson, McCullough, Gjerde, and Cheney, and that, the organization of the corporation having been abandoned, the proceeds of that contract should be distributed among the promoters of the corporation in proportion to their respective contribution to the funds of the proposed corporation. Appellants rely on the rule that where several persons associate themselves together, under a definite agreement to form a corporation for the carrying on of a certain business, and in furtherance of this plan do carry on the business for a time but fail to legally incorporate, in such case—whether the members be considered merely as promoters of a corporate enterprise, or as members of a quasi partnership—each member has an interest in the association property, and the extent of this interest is to be determined, not by the rule of implied equality of interest applicable to partners, but by regard to the proportionate amount of stock agreed upon as the share of each in the projected corporation. Cannon v. Brush, 96 Md. 446, 54 Atl. 121, 94 Am. St. 584; Shorb v. Beaudry, 56 Cal. 446; Crow v. Green, 111 Pa. St. 637, 5 Atl. 23.

This rule, carrying out as it does as nearly as possible the understanding and agreement of the parties, is, where applicable, just, and is in principle recognized by this court in the case of Tuller v. Swift, supra, page 263, 129 N. W. 572. It assumes, however, an

enterprise undertaken and carried on for a proposed corporation, and is necessarily based upon the existence of an agreement between the parties promoting such corporation as to their respective interests therein. The facts wholly fail to bring the present case within the rule.

. The corporation here proposed was not to be organized to obtain or carry on the McGregor contract, but to carry on a general contracting business in which the McGregor contract, already obtained, was to be only one incident. Plaintiff's contract for the Northtown work was to be taken over by the corporation and other work obtained. While the money paid in by Gjerde and Cheney was used in the McGregor work, it was put into a fund intended to be a permanent corporate fund, to be used for the general purposes of the corporation. At the time McCullough and Jacobson signed the McGregor contract there was between them, on the one hand, and Cheney and Gjerde, or either of them, on the other hand, no understanding or agreement that McCullough and Jacobson were acting for or representing in any way Cheney and Gjerde in signing the contract. The relationship of Cheney and Gjerde to the McGregor contract, if any, was established subsequent to the making of the contract and the acquiring by Jacobson and McCullough of rights therein. And finally the trial judge found, and the evidence amply sustains the finding, that the four parties herein never did arrive at an agreement, either as to the total capitalization of the proposed corporation or as to their proportionate shares therein. Entire disagreement on this point prevented the incorporation.

Under some circumstances an inference may be drawn from the payments made into the common fund as to the agreed proportionate interest of each in the common enterprise, but here the proof is that no agreement was arrived at. The payments made into the common fund were made "on account" of an interest in the corporation. To infer from these payments an agreement that the interest of each promoter in the corporation was to be in proportion to such payments would be directly at variance with the established facts in the case. The parties having refused to arrive at such an agreement, the court cannot make it for them.

The controlling principle of the rule invoked by appellants, and established in the cases cited, is wholly lacking in this case. The parties never carried forward their agreement for incorporation to a point where any ascertainable interest was acquired by each of them as promoters of the corporation in the McGregor contract. There being not only no agreement as to the interest of each in the proposed corporation, but a disagreement, the respective payments of each into the proposed corporate fund do not furnish a proper basis for dividing the proceeds of the McGregor contract, nor would such division, if possible, be just as between the parties under the facts in this case. The contract, as it now appears, was of great value as soon as it was signed. The profits derived from this contract do not seem to have depended upon, nor to bear any proportionate relationship to, the money paid in by Cheney and Gjerde. The trial judge rightly concluded that Cheney and Gjerde were not entitled to participate in the proceeds of the McGregor contract, and, that they, having paid money into a fund, the purpose of which had failed, were entitled to recover back the money paid in, together with interest for the use of it. Ashpitel v. Sercombe, 5 Exch. 147; Hudson v. West, 189 Pa. St. 491, 42 Atl. 190; London Assur. Co. v. Drennen, 116 U. S. 461, 6 Sup. Ct. 442, 29 L. ed. 688.

This conclusion makes clear the respective rights and interests of Jacobson and McCullough in the McGregor contract. The contract in its inception was their joint act. While they intended to turn the contract over to a corporation, when organized, and used the intended corporate name, together with their individual names, in signing the contract to facilitate such purpose, such transfer never became possible, because the corporation never came into being, and the individual promoters never agreed on the interest they would take in that or any other property intended for the proposed corporation. Jacobson and McCullough, as promoters of the proposed corporation, neither acquired nor parted with any rights in the McGregor contract. Their respective interests in the contract remained the interests which they acquired by their joint act in taking the contract and carrying forward the work to completion. It is unimportant that they never agreed to form a partnership by name. They

intentionally did acts out of which rights and obligations arise that are identical with the rights and obligations of partners in a completed partnership enterprise. Bestor v. Barker, 106 Ala. 240, 17 South. 389. In McDonald v. Campbell, 96 Minn. 87, 89, 104 N. W. 760, it is said: "Where a partnership is the legal result of the agreement actually made, parties are partners, even though they have stipulated that they are not to be partners." The contract was entered into and performed on their part without any agreement between them that their interests should be other than equal. Under these circumstances, the proceeds of their joint enterprise will be divided equally between them.

The finding and conclusion in the trial court that Jacobson and McCullough were and are equal partners in the enterprise referred to as the McGregor contract, and that they are each entitled to one-half of the net proceeds of that contract, to be determined by an accounting as directed, are in accord with the facts and the law applicable thereto.

Affirmed on both appeals.

JAGGARD, J., took no part.