FRANK B. BLUMBERG v. R. M. PALM AND ANOTHER.[1]

January 2, 1953.

No. 35,871.

[1]Reported in 56 N. W. (2d) 412.

*Fred Albert,* for appellants.
*Stacker & Stacker* and *Thomas J. Burke,* for respondent.

CHRISTIANSON, JUSTICE.

This action was instituted in the municipal court of Minneapolis to recover from defendants R. M. Palm and H. J. Card certain payments made under a contract entered into by plaintiff Frank B. Blumberg when he was a minor. Defendants contend that an actual or ostensible partnership existed between plaintiff and one Harold A. Soderstrom and that a minor who is a partner with an adult may not, upon rescission of a contract made by the partnership, recover back contributions he made to the partnership which were paid out under the contract.

The contract under which the payments were made is a conditional sales contract dated October 19, 1949, signed by plaintiff and Soderstrom, who are designated therein as vendees, whereby they agreed to buy the business, good will, stock, and fixtures of a certain restaurant in St. Paul, known as Card No. 7, from defendants for $4,200, including a $2,000 balance on a chattel mortgage. Vendees agreed to pay $800 upon execution of the contract and $190 per month thereafter until the balance of the purchase price, plus interest, was paid. They also agreed to pay $125 per month rent on the premises. There were also introduced into evidence a promissory note for $1,000, dated October 17, 1949, naming the "Card Investment Co." as payee and signed by Frank Blumberg; a certified copy of a certificate of trade name, dated October 22, 1949, signed by Soderstrom and plaintiff, and designating them as the persons conducting a business in the city of St. Paul under the name of Card No. 7 and as the persons interested in the business; a check for $225, dated December 3, 1949, naming "Card Inv. Co." as payee and signed by plaintiff; and a receipt of the same date,

signed by R. M. Palm, stating that $225 had been received of Frank Blumberg, $125 to be applied on rent and $100 to be applied on the contract. All of the documents except the check were prepared by defendants, but none of them referred to any partnership relation between plaintiff and Soderstrom.

It was stipulated that defendants had received a notice of rescission of the contract, which had been mailed on December 19, 1949. The only other evidence was testimony of plaintiff and of defendant Card. Defendant Palm did not testify, and neither party called Soderstrom.

Plaintiff testified that before the parties negotiated for the Card No. 7 restaurant, there had been negotiations relating to a different restaurant, known as the D. and D. Diner; that Soderstrom was not supposed to be in on this other transaction; that he and Soderstrom were together when they examined the premises of both restaurants, during the preliminary negotiations leading up to the conditional sales contract, and at the signing of the contract; that the $1,000 note was to be the down payment on the Card No. 7 restaurant until plaintiff reimbursed defendants and the note had no connection with the D. and D. Diner; that they later agreed on a payment of $800 and no demand was ever made on the note, which was returned to plaintiff when the $800 was paid; and that he alone contributed the $800 payment made when the contract was executed and Soderstrom contributed no part of it. Plaintiff also testified that Soderstrom went into the business with him to help him and was to become a partner later; that they bought the restaurant together and worked together but Soderstrom worked only two to four weeks; that plaintiff operated the restaurant completely and Soderstrom did not operate it but worked with plaintiff, although not as an employe; that they opened a bank account in both names and both of them had to sign the checks; that, after Soderstrom left, plaintiff obtained a release from him of the bank account and changed it solely to plaintiff's name; that Soderstrom did not receive any salary but was supposed to get a share of the proceeds if there were profits; and that both plaintiff and Soderstrom took a

"draw" for living expenses. Plaintiff testified further that Soderstrom signed the conditional sales contract and the certificate of trade name because he was to become a partner later and that he did not recall telling either defendant about the arrangement between Soderstrom and himself.

Defendant Card testified that the details of the sale of the Card No. 7 restaurant were settled before he saw plaintiff and Soderstrom and he had nothing to do with the transaction until it was being closed; that plaintiff and Soderstrom represented that they were partners and asked him to draw up a partnership agreement for them; and that he knew them as partners and presumed the cash came from both of them although he never inquired. He further testified that the $1,000 note was given in connection with the D. and D. Diner; that Soderstrom was not present when it was signed but was going to put up cash for that transaction; and that defendant Card returned the note when plaintiff and Soderstrom could not qualify for the D. and D. Diner.

The trial court gave judgment for plaintiff for $775, this being the amount paid on the purchase price less the rent due at the time of rescission. Thereafter, defendants' alternative motion for amended findings and conclusions or for a new trial was denied. They appeal from that portion of the trial court's order denying their motion for a new trial.

Defendants assign as error the trial court's findings that, in the negotiations leading up to the execution of the conditional sales contract and in the entire transaction, defendants dealt with plaintiff in his individual capacity and accepted the total payment of $900 from plaintiff in his individual capacity and that Soderstrom entered into the contract as an additional vendee with plaintiff but contributed no part of the consideration paid under the contract.

■ This court has defined a partnership as a contractual relation by which two or more persons have combined their property, labor, and skill in an enterprise or business as principals for the purpose of joint profit. Hamilton v. Boyce, 234 Minn. 290, 48 N. W. (2d) 172; Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570; Meagher

v. Fogarty, 129 Minn. 417, 152 N. W. 833; McDonald v. Campbell, 96 Minn. 87, 104 N. W. 760. The uniform partnership act defines a partnership as an association of two or more persons to carry on as co-owners a business for profit. M. S. A. 323.02, subd. 8. The cases are rare, however, in which this court has taken upon itself the determination of whether the evidence was within the definitions once a trier of fact in the trial court had made the determination. Most of the cases defining and discussing the elements of a partnership are cases which uphold the finding of a jury or a trial court sitting without a jury. This court has often said that there is no arbitrary test for the existence of a partnership and that, unless the evidence is conclusive, it is a question of fact for the trier of fact. Hamilton v. Boyce, *supra;* Randall Co. v. Briggs, 189 Minn. 175, 248 N. W. 752; Hammel v. Feigh, *supra;* Meagher v. Fogarty, *supra;* McDonald v. Campbell, *supra.*

Defendants ask us to hold that the evidence conclusively established a partnership between plaintiff and Soderstrom. This court will not interfere with the findings of a trial court sitting without a jury if the evidence as a whole reasonably tends to support those findings. 1 Dunnell, Dig. (3 ed.) § 411. We find nothing in the record and exhibits before us which would warrant our holding that plaintiff and Soderstrom were actual partners as a matter of law.

Defendants call attention to plaintiff's testimony that Soderstrom was supposed to get a share of the proceeds if there were profits. They cite § 323.06, which provides in part:

"In determining whether a partnership exists, these rules shall apply:

\* \* \* \* \*

"(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, \* \* \*."

However, a prima facie case simply means one that prevails in the absence of evidence invalidating it. If there is such evidence, the issue is for the trier of fact. Wojtowicz v. Belden, 211 Minn. 461,

1 N. W. (2d) 409; Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660, 95 A. L. R. 739.

■ On the question of ostensible partnership, defendants cite § 323.15, which provides in part:

"When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, * * *:

"(1) When a partnership liability results, he is liable as though he were an actual member of the partnership;"

If believed, defendant Card's testimony would require a finding of partnership by estoppel as a matter of law. However, certain inconsistencies and evasions found in his testimony make his credibility a question for the trier of fact. No useful purpose would be served by enumerating them here or by any further statement of the contradictions between his testimony and that of plaintiff. It is sufficient to state that where the credibility of a witness is in issue, the trier of fact is free to accept or reject the witness's testimony. Grengs v. Erickson, 225 Minn. 153, 29 N. W. (2d) 881.

Moreover, the unexplained failure to call defendant Palm to testify was a factor which weakened defendants' position on this issue of the case. Palm played a significant part in the negotiations which ultimately resulted in the conditional sales contract, and he presumably could have testified concerning the question of ostensible partnership. An unexplained failure to call a witness or to produce evidence within the control of a party permits an inference that the witness, if called, or the evidence, if produced, would be unfavorable to the party. M & M Securities Co. v. Dirnberger, 190 Minn. 57, 250 N. W. 801. The inference may be drawn against a party who fails to testify without explanation. James v. Warter,

156 Minn. 247, 194 N. W. 754; Wilson v. Northwestern Nat. L. Ins. Co. 103 Minn. 35, 114 N. W. 251.

The trial court's finding that in the entire transaction defendants dealt with plaintiff in his individual capacity clearly shows that the court did not believe defendant Card's testimony relating to ostensible partnership. This court cannot judge the credibility of the witnesses. Viewing the evidence as a whole and in the light most favorable to the plaintiff, it is our opinion that it supports the finding of the trial court on this issue.

■ Defendants also assign as error the admission of certain evidence. They contend that admission of the $1,000 promissory note violated the parol evidence rule. They argue that the conditional sales contract is wholly integrated and unambiguous and thus precludes resort to evidence of what took place during the negotiations prior to execution of the contract for the purpose of determining the capacity in which plaintiff and Soderstrom signed the contract or the capacity in which defendants were led to believe that plaintiff and Soderstrom signed the contract. However, the clear and unmistakable designation of plaintiff and Soderstrom as vendees in the contract does not unambiguously make them partners nor does it establish that they held themselves out to be partners. The contract is consistent both with a partnership between the vendees and with the lack of a partnership between them, and it was not error to receive evidence which might have helped the court resolve the ambiguity. Cf. Wick v. Murphy, 237 Minn. 447, 54 N. W. (2d) 805; Podany v. Erickson, 235 Minn. 36, 49 N. W. (2d) 193.

Although defendants made no objections thereto at the trial, they now contend that admission of evidence that the funds paid on the contract belonged to plaintiff and admission of the $225 check were error, the former because the funds were partnership property and thus not recoverable by plaintiff upon rescission, the latter because payment on December third had no bearing upon the intention of the parties at the time of executing the contract. The former contention assumes the answer to a question very much at issue in the case. As for the latter contention, it does not appear from the

record that the trial court relied upon the check as indicating the intention of the parties at the time the contract was executed. Clearly, in an action by a minor plaintiff to recover money paid under a contract he has chosen to rescind, evidence of what he paid under the contract is highly relevant to the issue of how much he can recover if he is entitled to rescind. If defendants wished to limit the admission of the $225 check to that purpose, they should have, at least, made their position known to the trial court in their motion for a new trial. See, 1 Dunnell, Dig. (3 ed.) § 395. They cannot raise the issue for the first time on appeal, especially where no showing is made that the evidence was used improperly. See, Pump-It, Inc. v. Alexander, 230 Minn. 564, 42 N. W. (2d) 337; Fleetham v. Lindgren, 221 Minn. 544, 22 N. W. (2d) 637.

Since we uphold the findings of the trial court that no actual or ostensible partnership existed between plaintiff and Soderstrom, we need not consider what the effect of such partnership would be upon plaintiff's right to recover the payments made under the contract.

Affirmed.